**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Case No:  11-CV-61879-WPD**

LEONARDO de SOUZA, individually and
on behalf of all others similarly situated,

                Plaintiff,

  -against-

MAGNUM D'OR RESOURCES, INC.,
JOSEPH J. GLUSIC and MICHEL BOUX

                Defendants.

**COMPENDIUM OF UNREPORTED CASES**

**CASE** **TAB**

*Grand Lodge of Pa. v. Peters*,
    07 Civ. 479, 2007 U.S. Dist. LEXIS 48191 (M.D. Fla. June 22, 2007) ......................................1

*Miller v. Dyadic Int'l, Inc.*,
    C.A. No. 07-civ-80948, 2008 U.S. Dist. LEXIS 32271 (S.D. Fla. Apr. 18, 2008) ...................2

# TAB 1

LEXSEE


Positive
As of: Sep 14, 2011

GRAND LODGE OF PENNSYLVANIA, and all others similarly situated, Plaintiff, v. BRIAN P. PETERS, BRIAN F. GRIMES, JUSTIN D. LOCKE, ANNE V. LEE, and COAST FINANCIAL HOLDINGS, INC., Defendants. TROY RATCLIFF, individually and on behalf of all others similarly situated, Plaintiff, v. COAST FINANCIAL HOLDINGS INC., BRIAN P. PETERS, BRIAN F. GRIMES and JUSTIN D. LOCKE, Defendants. DANIEL ALTENBURG, individually and on behalf of all others similarly situated, Plaintiff, v. COAST FINANCIAL HOLDINGS INC., BRIAN P. PETERS, BRIAN F. GRIMES, and JUSTIN D. LOCKE, Defendants.

CASE NO: 8:07-cv-479-T26-EAJ, CASE NO: 8:07-cv-504-T-26MAP, CASE NO. 8:07-cv-642-T-26TGW

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION

2007 U.S. Dist. LEXIS 48191

June 22, 2007, Decided
June 22, 2007, Filed

**SUBSEQUENT HISTORY:** Motions ruled upon by, Claim dismissed by Grand Lodge of Pa. v. Peters, 2008 U.S. Dist. LEXIS 21204 (M.D. Fla., Mar. 13, 2008)

**CORE TERMS:** financial interests, appointment, lead counsel, consolidated, consolidate, appointed, largest, stock, consolidation, typicality, incapable, adequacy, case number, investor, join

**COUNSEL:** [*1] For Grand Lodge of Pennsylvania, Plaintiff: Julie Prag Vianale, LEAD ATTORNEY, Kenneth J. Vianale, LEAD ATTORNEY, Vianale & Vianale LLP, Boca Raton, FL.

For R. Daniel Altenburg, individually and on behalf of all others similarly situated, Consol Plaintiff: Joseph E. White, III, LEAD ATTORNEY, Maya S. Saxena, LEAD ATTORNEY, Saxena White P.A., Boca Raton, FL.

For Troy Ratcliff, individually and on behalf of all others similarly situated, Consol Plaintiff: David J. George, LEAD ATTORNEY, Jack Reise, LEAD ATTORNEY, Paul J. Geller, LEAD ATTORNEY, Lerach Coughlin Stoia Geller Rudman & Robbins, LLP, Boca Raton, FL; David A. Rosenfeld, LEAD ATTORNEY, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, Melville, NY; Joseph E. White, III, LEAD ATTORNEY, Maya S. Saxena, LEAD ATTORNEY, Saxena White P.A., Boca Raton, FL; Mario Alba, Jr., LEAD ATTORNEY, Samuel H. Rudman, LEAD ATTORNEY, Geller Rudman, PLLC, Melville, NY.

For Brian P. Peters, Defendant: Brian P. Battaglia, LEAD ATTORNEY, Anthony Sylvester Battaglia, Scott M. Bonavita, Battaglia, Ross, Dicus & Wein, PA, St Petersburg, FL.

For Brian F. Grimes, Justin D. Locke, Anne V. Lee, Coast Financial Holdings, Inc., Defendants: Samuel J. Salario, Jr., [*2] LEAD ATTORNEY, Kathryn Harrigan Christian, Carlton Fields, P.A., Tampa, FL.

**JUDGES:** RICHARD A. LAZZARA, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** RICHARD A. LAZZARA

**OPINION**

**ORDER**

Before the Court is the Amended Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel filed by Grand Lodge of Pennsylvania, [1] the Memorandum in Opposition of R. Daniel Altenburg and Troy Ratcliff, [2] and the Motion to Appoint Lead Plaintiff and Approve Selection of Counsel filed by R. Daniel Altenburg and Troy Ratcliff, [3] and the Response. [4] After careful consideration of the submissions of the various Plaintiffs and the applicable law, the Court concludes that R. Daniel Altenburg and Troy Ratcliff and their attorneys shall be appointed as lead Plaintiffs and co-lead attorneys, respectively.

  1   See docket 18 in 8:07-cv-479-T-26EAJ.
  2   See docket 26 in 8:07-cv-479-T-26EAJ.
  3   See docket 20 in 8:07-cv-479-T-26EAJ.
  4   See docket 27 in 8:07-cv-479-T-26EAJ.

**Pertinent Facts**

These three cases brought by investors for securities fraud involve the failure of Defendant Coast Financial Holdings, Inc. (CFHI) to disclose its high risk loans extended to Construction Compliance Incorporated (CCI) for the construction of homes with minimal [*3] or no money down by the borrowers. CFHI did not increase its loan reserves, and CCI allegedly withdrew tens of millions of dollars to construct homes which were never completed. When this information was publicized, CFHI's stock plummeted. Plaintiff The Grand Lodge of Pennsylvania (Grand Lodge) lost $ 9,735.02 as a result of its purchases of common stock; Plaintiff Daniel Altenburg lost $ 48,030.00; and Plaintiff Troy Ratcliff lost $ 18,334.00.

Two factions of Plaintiffs seek the appointment of lead counsel. [5] Grand Lodge, as the investor to first file suit on March 20, 2007, contends that it is the most qualified lead Plaintiff. Altenburg and Ratcliff rely on the fact that not only are their financial interests the largest as an aggregate amount, but individually, their financial interests are each larger than Grand Lodge's. Grand Lodge attempts to rebut the individuals' position by arguing that Altenburg has no claim at all because the dates on which he probably purchased stock would likely not be covered by the relevant time periods of the fraud. Grand Lodge contends that their definition of the first class period controls with a start date of October 28, 2005, which would necessarily [*4] foreclose Alternburg's claim because he purchased his stock before any misrepresentations were made. In any event, Grand Lodge requests that it be permitted to join in with Altenburg and Ratcliff as lead plaintiffs or, in the alternative, be permitted to request to join in as a lead plaintiff should Altenburg's claim later be found to be unsustainable during the applicable class period.

  5   Defendants do not oppose the motions.

**Analysis**

The Private Securities Litigation Reform Act of 1995 (PSLRA) governs the appointment of lead plaintiff. 15 U.S.C. §78u-4(a)(3)(B). The PSLRA requires that the Court consolidate the actions, if warranted, before determining lead plaintiff. [6] Grand Lodge, Altenburg, and Ratcliff have all three requested consolidation. After a review of the three complaints, the Court finds that consolidation is warranted.

  6   "If more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall not make the determination required by clause (i) until after the decision on the motion to consolidate is rendered." [*5] 15 U.S.C. §78u-4(a)(3)(B)(ii).

Having consolidated the cases, the Court further finds that Altenburg and Ratcliff should be appointed lead Plaintiffs. The PSLRA, and the case law interpreting it, provide the criteria for determining the "most adequate" lead plaintiff or plaintiffs. 15 U.S.C. §78u-4(a)(3)(B)(iii). The Court must adopt the following three presumptions: (1) the proposed lead plaintiff has either filed the complaint or made a timely motion in response to properly published notice of the pendency of the action; (2) the proposed lead plaintiff "has the largest financial interest in the relief sought by the class;" and (3) the proposed lead plaintiff satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, which includes typicality and adequacy. [7] 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa), (bb), and (cc). These three presumptions, however, may be rebutted by proof that the proposed lead plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa) and (bb). [8]

  7   Although there are four requirements [*6] under Rule 23, some courts have generally held that at this stage of the proceedings when a lead plaintiff needs to be appointed, only the typicality and adequacy prongs need to be analyzed. See In re Cendant Corp. Litig., 264 F.3d 201, 264 (3rd Cir. 2001); Gluck v. CellStar Corp., 976 F.Supp. 542, 546 (N.D. Tex. 1997).
  8   For cases in this District analyzing the appointment of lead plaintiff, see Piven v. Sykes Enters., 137 F. Supp. 2d 1295 (M.D. Fla. 2000);

In re Catalina Mktg. Corp. Secs. Litig., 225 F.R.D. 684 (M.D. Fla. 2003); In re Faro Techs. Sec. Litig., Nos. 6:05-cv-1810-Orl-22DAB, et al., 2006 U.S. Dist. LEXIS 23500, 2006 WL 1119201 (M.D. Fla. Apr. 26, 2006); and Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc., No. 8:06-cv-1716-T-23EAJ, 2007 U.S. Dist. LEXIS 3592, 2007 WL 170556 (M.D. Fla. Jan. 18, 2007).

It is overwhelmingly evident from the submissions that, all other factors equal, the lead plaintiff with the largest financial interest is Altenburg with $ 48,030.00, and the lead plaintiff with the second largest financial interest is Ratcliff with $ 18,334.00. Grand Lodge falls in third place with $ 9,735.00. Grand Lodge asks this Court to delve into the merits of the claims and to define the class period at this [*7] early stage of the proceedings before a class has been certified or those issues have been fully briefed. This it cannot do. Moreover, the factors, other than financial interest, under §78u-4 appear to be largely incapable of differentiation among the moving lead plaintiffs.

Having thus determined that Altenburg and Ratcliff may serve as lead plaintiffs and their counsel as lead counsel, the Court notes that such an appointment is "without prejudice to the possibility of revisiting that issue in considering a motion for class certification." Greebel v. FTP Software, Inc., 939 F.Supp. 57, 60 (D.Mass. 1996).

It is therefore **ORDERED AND ADJUDGED** as follows:

(1) The Amended Motion for Consolidation filed by the Grand Lodge of Pennsylvania (Dkt. 18) is **GRANTED.**

(2) The Motion to Consolidate filed by R. Daniel Altenburg and Troy Ratcliff (Dkt. 20) is **GRANTED.**

(3) The Amended Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel filed by Grand Lodge (Dkt. 18) is **DENIED.**

(4) The Motion to Appoint Lead Plaintiff and Approve Selection of Counsel filed by R. Daniel Altenburg and Troy Ratcliff (Dkt. 20) is **GRANTED.**

(5) R. Daniel Altenburg and Troy Ratcliff are appointed lead [*8] Plaintiffs.

(6) Their selection of Saxena White P.A. and Lerach Coughlin Stoia Geller Rudman & Robbins LLP as lead counsel is approved.

(7) Lead Plaintiffs shall file a consolidated amended complaint no later than forty-five (45) days from the date of this order. Defendants shall have forty-five (45) days from the date of filing to respond to the consolidated amended complaint.

(8) Case numbers 8:07-cv479, 8:07-cv-504, and 8:07-cv-642 are hereby consolidated for all purposes. All future pleadings and orders shall bear the style of this order and shall be filed in the lowest case number, 8:07-cv-479.

(9) The Clerk is directed to administratively close case numbers 8:07-cv-504 and 8:07-cv-642.

**DONE AND ORDERED** at Tampa, Florida, on June 22, 2007.

s/ *Richard A. Lazzara*

**UNITED STATES DISTRICT JUDGE**

# TAB 2

LEXSEE


Analysis
As of: Sep 14, 2011

**MICHAEL MILLER, individually and on behalf of all others similarly situated, Plaintiffs, vs. DYADIC INTERNATIONAL, INC., MARK A. EMALFARB, STEVEN J. WARNER, HARRY Z. ROSENGART, RICHARD J. BERMAN, ROBERT B. SHAPIRO, and GLENN E. NEDWIN, Defendants.**

CASE NO. 07-80948-CIV-DIMITROULEAS

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

**2008 U.S. Dist. LEXIS 32271; Fed. Sec. L. Rep. (CCH) P94,703**

**April 18, 2008, Decided
April 18, 2008, Entered**

**SUBSEQUENT HISTORY:** Sanctions allowed by, in part Miller v. Dyadic Int'l, Inc., 2008 U.S. Dist. LEXIS 109509 (S.D. Fla., May 20, 2008)

**PRIOR HISTORY:** Miller v. Dyadic Int'l, Inc., 2007 U.S. Dist. LEXIS 96099 (S.D. Fla., Dec. 14, 2007)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff investors sued defendants, a corporation and its officers and directors, for securities violations under §§ 10(b), 20(a), of the Securities Exchange Act of 1934, in a class action. Two lead plaintiff candidates sought to be appointed as lead plaintiffs and to have their counsel approved as lead counsel. The first candidate was a Florida investment advisor and the second candidate was an individual investor residing in Hawaii.

**OVERVIEW:** The candidates' losses claimed after the 15 U.S.C.S. § 78u-4(a)(3)(A)(i)(II) sixty day period expired could not be considered as the original amounts were those sent out in the notice to the class. Applying the longest proposed class period and the losses as claimed during the 60 day period, the investment advisor had the largest financial interest. It was not disqualified on unsupported allegations its principal engaged in insider trading or for originally opposing another's appointment as lead plaintiff then seeking to co-lead with that plaintiff. The advisor stated that discovery answered many of its worries and seeking appointment as co-lead plaintiff was not so egregious as to disqualify it after the other withdrew. As an investment advisor to its clients, it was the stock "purchaser" with standing to sue in its own name, on its clients' behalf. And, its proposed Lead and Liaison Counsel had extensive experience in successfully prosecuting complex securities actions. Nothing suggested the advisor or its counsel would not fairly and adequately represent the class; counsels' appointments were proper under 15 U.S.C.S. § 78u-4(a)(3)(B)(v).

**OUTCOME:** The investment advisor's motion to be appointed Lead Plaintiff, and for approval of its selection of Lead Counsel and Liaison Counsel was granted. The individual investor's motion for appointment as Lead Plaintiff and approval of Lead Counsel was denied.

**CORE TERMS:** appointment, stock, investment advisor, financial interest, lead counsel, appointed, securities laws, largest, purchaser, longest, class member, standing to sue, calculation, presumptive, notice, claimed losses, liaison, rebut, financial loss, supplementation, discovery, inclusive, adequacy, investor', own interests, co-lead, shorter, class action, own name, declaration

**LexisNexis(R) Headnotes**

2008 U.S. Dist. LEXIS 32271, *; Fed. Sec. L. Rep. (CCH) P94,703

*Civil Procedure > Class Actions > Class Members > Named Members*
*Civil Procedure > Class Actions > Derivative Actions > Adequate Representation Requirement*
*Evidence > Inferences & Presumptions > Presumptions > Creation of Presumptions*
*Securities Law > Liability > Private Securities Litigation > Lead Plaintiff*
[HN1]The Private Securities Litigation Reform Act of 1995 (PSLRA) provides that within 90 days after publication of notice, the court must consider any motion made by a class member and appoint as Lead Plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of the class members. 15 U.S.C.S. § 78u-4(a)(3)(B)(i). In determining the most adequate plaintiff, the PSLRA creates a presumption. It provides that the court shall adopt a presumption that the most adequate plaintiff in any private action arising under the PSLRA is the person or group of persons that (aa) has either filed the complaint or made a motion in response to a notice; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Fed. R. Civ. P. 23. 15 U.S.C.S. § 78u-4(a)(3)(B)(iii)(II).

*Civil Procedure > Class Actions > Class Members > Named Members*
*Civil Procedure > Class Actions > Derivative Actions > Adequate Representation Requirement*
*Evidence > Inferences & Presumptions > Presumptions > Creation of Presumptions*
*Securities Law > Liability > Private Securities Litigation > Lead Plaintiff*
[HN2]In determining which proposed lead plaintiff in a securities litigation class action has the "largest financial interest" under 15 U.S.C.S. § 78u-4(a)(3)(B)(iii)(II), relevant factors are (1) the number of shares purchased during the class period, (2) the amount of the investment, and (3) the alleged loss. This is only a presumption, however. Any member of the proposed class may rebut the presumption upon proof that the presumptively most adequate plaintiff is subject to unique defenses, 15 U.S.C.S. § 78u-4(a)(3)(B)(iii)(II)(bb), or will not fairly and adequately protect the interests of the class. 15 U.S.C.S. § 78u-4(a)(3)(B)(iii)(II)(aa).

*Civil Procedure > Class Actions > Class Members > Named Members*
*Civil Procedure > Class Actions > Derivative Actions > Adequate Representation Requirement*
*Securities Law > Liability > Private Securities Litigation > Lead Plaintiff*
[HN3]Some courts have found that the class period noticed in the first-filed securities litigation complaint is the appropriate class period at the lead plaintiff selection phase because it was the period sent out in the notice to the class. However, the United States District Court for the Southern District of Florida finds that the better rule, as many other courts have held, is the rule that chooses the most inclusive class period at the early stage in the litigation.

*Civil Procedure > Class Actions > Class Members > Named Members*
*Civil Procedure > Class Actions > Derivative Actions > Adequate Representation Requirement*
*Civil Procedure > Class Actions > Notices*
*Securities Law > Liability > Private Securities Litigation > Lead Plaintiff*
[HN4]See 15 U.S.C.S. § 78u-4(a)(3)(A)(i)(II).

*Civil Procedure > Class Actions > Class Members > Named Members*
*Civil Procedure > Class Actions > Derivative Actions > Adequate Representation Requirement*
*Civil Procedure > Class Actions > Derivative Actions > Notices*
*Securities Law > Liability > Private Securities Litigation > Lead Plaintiff*
[HN5]The 60 day filing deadline in 15 U.S.C.S. § 78u-4(a)(3)(A)(i)(II) is a hard-and-fast rule with no room for subsequent supplementation or modification.

*Civil Procedure > Class Actions > Class Members > Named Members*
*Civil Procedure > Class Actions > Derivative Actions > Adequate Representation Requirement*
*Civil Procedure > Class Actions > Prerequisites > General Overview*
*Securities Law > Liability > Private Securities Litigation > Lead Plaintiff*
[HN6]Under 15 U.S.C.S. § 78u-4(a)(3)(B) of the Private Securities Litigation Reform Act of 1995, in addition to possessing the largest financial interest in the outcome of the litigation, the most adequate lead plaintiff must otherwise satisfy the requirements of Fed. R. Civ. P. 23. 15 U.S.C.S. § 78u-4(a)(3)(B). Fed. R. Civ. P. 23(a) imposes four (4) requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a). Of those prerequisites, only two -- typicality and adequacy -- are relevant in deciding a motion for appointment of lead plaintiff.

Case 0:11-cv-61879-WPD   Document 11   Entered on FLSD Docket 09/16/2011   Page 10 of 17

2008 U.S. Dist. LEXIS 32271, *; Fed. Sec. L. Rep. (CCH) P94,703

*Civil Procedure > Class Actions > Derivative Actions > Adequate Representation Requirement*
*Civil Procedure > Class Actions > Prerequisites > Adequacy of Representation*
[HN7]The adequacy requirement of Fed. R. Civ. P. 23(a) is satisfied where (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the class has sufficient interest in the outcome of the case to ensure vigorous advocacy.

*Civil Procedure > Class Actions > Derivative Actions > Adequate Representation Requirement*
*Civil Procedure > Class Actions > Prerequisites > Adequacy of Representation*
*Evidence > Inferences & Presumptions > Presumptions > Rebuttal of Presumptions*
*Securities Law > Liability > Private Securities Litigation > Lead Plaintiff*
[HN8]In determining whether a lead plaintiff candidate has met his burden of rebutting 15 U.S.C.S. § 78u-4(a)(3)(B)(iii)(II)'s presumption as to the most adequate plaintiff, the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a fair and adequate job.

*Civil Procedure > Justiciability > Standing > Third Party Standing*
*Securities Law > Liability > Advisers, Brokers & Dealers > General Overview*
*Securities Law > Liability > Private Securities Litigation > Lead Plaintiff*
[HN9]Investment advisors with authority to make investment decisions for their clients are purchasers for purposes of the securities laws such that they have standing.

*Civil Procedure > Class Actions > Class Counsel > Appointments*
*Securities Law > Liability > Private Securities Litigation > Lead Counsel*
[HN10]The Private Securities Litigation Reform Act of 1995 vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the court. 15 U.S.C.S. § 78u-4(a)(3)(B)(v).

**COUNSEL:**  [*1] For Michael Miller, indvidually and on behalf of all others similarly situated, Plaintiff: Julie Prag Vianale, Kenneth J. Vianale, LEAD ATTORNEYS, Vianale & Vianale, Boca Raton, FL.

For Capital Max, Inc., Plaintiff: Glenn L. Hara, Matthew T. Heffner, LEAD ATTORNEYS, Susman Heffner & Hurst LLP, Chicago, IL, US; Adam M. Moskowitz, Kozyak Tropin & Throckmorton, Coral Gables, FL.

For David Hanlin, Plaintiff: Julie Prag Vianale, LEAD ATTORNEY, Vianale & Vianale, Boca Raton, FL.

For Arab Banking Corp., Lead plaintiff, Plaintiff: Laurence Matthew Rosen, LEAD ATTORNEY, The Rosen Law Firm, New York, NY; Adam M. Moskowitz, Kozyak Tropin & Throckmorton, Coral Gables, FL.

For Dyadic International,Inc., Defendant: Raquel M. Fernandez, Bilzin Sumberg Baena Price & Axelrod, Miami, FL.

For Mark A. Emalfarb, Defendant: John Simmons Trimper, LEAD ATTORNEY, Jones Foster Johnston & Stubbs, West Palm Beach, FL.

**JUDGES:** WILLIAM P. DIMITROULEAS, United States District Judge. Magistrate Judge Rosenbaum.

**OPINION BY:** WILLIAM P. DIMITROULEAS

**OPINION**

**ORDER APPOINTING LEAD PLAINTIFF AND APPROVING LEAD COUNSEL**

THIS CAUSE is before the Court upon Capital Max Inc's Motion to be Appointed Lead Plaintiff, and for Approval of its Selection of Lead Counsel  [*2] and Liaison Counsel [DE 9], and Olav C. Holst's Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel [DE 16]. The Court has carefully considered the Motions, Capital Max's Supplemental Memorandum of Law in Support of its Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel [DE 65], the Reply Brief of Class Member Olav C. Holst in Further Support of His Motion for Appointment as Lead Plaintiff [DE 69], the Rebuttal Brief of Class Member Olav C. Holst in Opposition to Capital Max's Motion for Appointment as Lead Plaintiff [DE 66], Capital Max's Response to Holst's Rebuttal Brief in Opposition to Capital Max's Motion for Appointment as Lead Plaintiff [DE 67] the attached exhibits, declarations and affidavits, the arguments of the parties made before the undersigned at the hearing on March 14, 2008, and is otherwise fully advised in the premises.

**I. BACKGROUND**

Case 0:11-cv-61879-WPD   Document 11   Entered on FLSD Docket 09/16/2011   Page 11 of 17

2008 U.S. Dist. LEXIS 32271, *; Fed. Sec. L. Rep. (CCH) P94,703

This case involves allegations against Dyadic International, Inc. ("Dyadic") and several of its current and former officers and directors for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. Dyadic is a biotech company based in south Florida and its securities were traded [*3] publicly on the American Stock Exchange ("AMEX"). The plaintiffs in the various actions against the Defendants are all purchasers of Dyadic stock and claim that Defendants made material misstatements and omissions regarding financial improprieties in the operation of some of the company's Asian subsidiaries in violation of the federal securities laws. When these improprieties became public the securities dropped in value. Dyadic then fired Defendant Emalfarb stating that he had "willfully concealed facts" relating to the Asian subsidiaries' improprieties and on April 23, 2007, AMEX halted trading of Dyadic securities at the company's request. Trading of Dyadic stock remains halted and AMEX has recently given notice of its intent to delist Dyadic securities entirely. Plaintiffs allege they were injured as a result of the Defendants securities violations.

Six (6) different plaintiffs brought suit against Dyadic for these violations, which have been consolidated pursuant to Rule 42(a) of the Federal Rules of Civil Procedure into this single action in front of the undersigned [DEs 18 & 20]. The plaintiff in Miller, the first filed case, published notice to the class on October 12, 2007 [*4] giving any other group of interested persons up to and including December 11, 2007 within which to petition the Court to be appointed Lead Plaintiff. The plaintiff in Miller defined the Class period as November 10, 2006 through April 23, 2007. This was the shortest class period claimed in any of the six (6) complaints. The longest class period was defined by Capital Max as November 14, 2005 through April 23, 2007.

Initially, five plaintiffs, or plaintiff groups petitioned for appointment as lead plaintiff in this action. On December 14, 2008, based on the information available at the time, the Court appointed the Arab Banking Corporation ("ABC") Lead Plaintiff in this case [DE 19]. [1] In the wake of that Order, proposed lead plaintiffs Capital Max, Inc.("Capital Max") and Olav C. Holst ("Mr. Holst") [*5] sought brief discovery into ABC's adequacy. Mr. Holst also filed a Motion for Reconsideration [DE 25]. Subsequently, however, Capital Max and ABC filed a Joint Motion for Appointment as Co-Lead Plaintiffs [DE 36]. Since that time, ABC has withdrawn as Lead Plaintiff, and the Court must now appoint a new Lead Plaintiff in this action. The two remaining candidates are Capital Max and Mr. Holst.

   1   ABC claimed losses of $ 2.7 million, making its claimed loss by far the largest of the potential lead plaintiffs at the time.

Proposed lead plaintiff Capital Max is an investment advisor registered with the Securities and Exchange Commission, organized under the laws of Florida and headquartered in Florida. Capital Max provides investment advisory services to high net worth individuals, certain institutional investors, and other pooled investment vehicles. Frank Prissert ("Prissert") is the CEO of Capital Max and the individual primarily responsible for its investment advice and research. In its initial motion to be appointed lead plaintiff, Capital Max claimed losses totaling $ 359,857.00. However, after correcting what Capital Max claims were minor "clerical errors," Capital Max now claims a "financial [*6] interest" of $ 381,564.87 under the last-in-first-out ("LIFO") method of calculating loss and $ 409,567.68 under the first-in-first-out ("FIFO") method of calculating loss.

Proposed lead plaintiff Mr. Holst is an individual, retired military officer, currently residing in Hawaii. Mr. Host bought shares of Dyadic stock on behalf of himself, his brother, and the estate of their deceased mother through Shaw Farms PTY Ltd ("Shaw Farms"), [2] an Australian Corporation. Shaw Farms is a family trust created by Mr. Holst and his family to invest in the stock market on their behalf. Mr. Holst is the Director of Shaw Farms. In his initial application, Mr. Holst claimed that he had purchased 60,000 shares of Dyadic stock for a loss of $ 328,500.00. [3] Now, Mr. Holst claims that the prior report contained a "typographical error" and he actually purchased 80,000 shares for a total loss of $ 391,500.00. Mr. Holst still holds all of the shares he purchased on behalf of Shaw Farms.

   2   Proposed lead plaintiff Capital Max argues that Shaw Farms is actually the real party in interest in this case rather than Mr. Holst. However, because the Court finds that neither Mr. Holst, nor Shaw Farms would be the "most [*7] adequate lead plaintiff," the Court need not address this distinction and will simply refer to Mr. Holst.
   3   While Mr. Holst only claimed $ 234,000.00 in losses in his initial application, he based this calculation on a shortened class period. Mr. Holst, however, also listed an additional 30,000 shares purchased pre-class period which would add another $ 94,500.00 to his losses. As discussed in more detail below, because the Court elects to use a longer class period than that relied on by Mr. Holst in his initial application, the Court will give Mr. Holst credit for these pre-class period losses, bringing his total claimed losses to $ 328,500.00.

Case 0:11-cv-61879-WPD   Document 11   Entered on FLSD Docket 09/16/2011   Page 12 of 17

2008 U.S. Dist. LEXIS 32271, *; Fed. Sec. L. Rep. (CCH) P94,703

The parties have engaged in some uncooperative discovery, the issue has been more than adequately briefed, the undersigned has heard oral arguments and the issue of Lead Plaintiff in this putative class action is now ripe for disposition.

II. DISCUSSION

The Court must now decide between two proposed lead plaintiffs, both of whom concede that the difference between the losses suffered by each is small. Accordingly, the Court will go through the analysis as required by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), select the appropriate [*8] class period, select the presumptive lead plaintiff, ensure that the presumptive lead plaintiff is otherwise adequate, and finally approve lead and liaison counsel for the class.

*1. Standard for Selection of Lead Plaintiff under the PSLRA*

These motions are governed by the Securities Exchange Act of 1934, as amended by the PSLRA. The PSLRA was enacted to remedy perceived abuses in the class action procedure in securities fraud actions. See Piven v. Sykes Enters. Inc., 137 F. Supp. 2d 1295, 1301 (M.D. Fla. 2000). [HN1]The PSLRA provides that within ninety (90) days after publication of notice, the court must consider any motion made by a class member and appoint as Lead Plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of the class members. 15 U.S.C. § 78u-4(a)(3)(B)(i).

In determining the "most adequate plaintiff," the PSLRA creates a presumption. It provides that:

> the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that -
>
> (aa) has either filed the complaint or made a motion in response to a notice . . .
>
> (bb) in the determination [*9] of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). [4] [HN2]In determining which proposed lead plaintiff has the "largest financial interest" relevant factors are (1) the number of shares purchased during the class period, (2) the amount of the investment, and (3) the alleged loss. See Burke v. Ruttenberg, 102 F. Supp. 2d 1280, 1341 (N.D. Ala. 2000). This is only a presumption, however. Any member of the proposed class may rebut the presumption upon proof that the presumptively most adequate plaintiff "is subject to unique defenses," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb), or "will not fairly and adequately protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

> 4   The first requirement does not merit further discussion as both proposed lead plaintiffs have filed a complaint and a motion for appointment as lead plaintiff.

*2. The Longest Class Period is the Appropriate Class Period*

As a preliminary matter, the Court must determine the appropriate class period to utilize in selecting a lead plaintiff. The Court [*10] emphasizes that this determination is for the purposes of the selection of the lead plaintiff only, subject to modification at a later date, upon motion by the parties and with the participation of the Defendants. Capital Max argues that there are two relevant class periods that the Court could use in its "financial interest" calculation: (1) the longest class period in the complaint filed by Capital Max (November 14, 2005 through April 23, 2007) or (2) the shorter class period in the first-filed Miller action (November 10, 2006 through April 23, 2007). Under the longer class period, both proposed parties claim losses. However, under the shorter period only Capital Max claims to have suffered damages. Mr. Holst did not make any purchases during the shorter proposed class period. Accordingly, under the shorter class period, not only could Mr. Holst not serve as lead plaintiff, he would not even be a member of the class.

[HN3]Some courts have found that the class period noticed in the first-filed complaint is the appropriate class period at the lead plaintiff selection phase because it was the period sent out in the notice to the class. See Piven, 137 F. Supp. 2d at 1303; cf In Re Telxon Corp. Sec. Litig., 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999). [*11] However, the Court finds that the better rule, as many other courts have held, is the rule that chooses the most inclusive class period at this early stage in the litigation. See e.g. In re Doral Fin. Corp. Sec. Litig., 414 F. Supp. 2d 398, 402-03 (S.D.N.Y. 2006); Bhojwani v. Pis-

Case 0:11-cv-61879-WPD   Document 11   Entered on FLSD Docket 09/16/2011   Page 13 of 17

2008 U.S. Dist. LEXIS 32271, *; Fed. Sec. L. Rep. (CCH) P94,703

tiolis, 2007 U.S. Dist. LEXIS 52139 * 14 (S.D.N.Y. June 26, 2007); cf Grand Lodge of Pa. v. Peters, 2007 U.S. Dist. LEXIS 48191 *6-7 (M.D. Fla. June 22, 2007) ( "[Proposed Lead Plaintiff] asks this Court to delve into the merits of the claims and to define the class period at this early stage of the proceedings before a class has been certified or those issues have been fully briefed. This it cannot do."). The Court agrees with the reasoning of the court in In re Doral, that the longest, most inclusive class period is appropriate at this stage in the litigation because "it encompasses more potential class members." 414 F. Supp. 2d at 402. Narrowing the class period is more appropriate at a later stage of litigation, with participation from the Defendant.

In this case, the Court finds the selection of the longer, more inclusive class period is especially appropriate for two additional reasons. First, the Miller [*12] class period, which was the first-filed action and the class period included in the notice in this case, is by far the shortest class period selected by any of the plaintiffs who filed complaints in this case. Each of the additional five (5) complaints in this consolidated action choose a longer class period than the Miller plaintiffs, making selection of the shortest class period particularly inappropriate. Second, the longest class period in this case was selected by proposed lead plaintiff Capital Max. Now, while Mr. Holst argues for the use of the longest, most inclusive period, Captial Max has changed its position slightly to suggest that the shorter period might be appropriate. Accordingly, the Court finds that the longest and most inclusive class period, beginning on November 14, 2005 and ending on April 23, 2007, is the appropriate class period for purposes of appointing a lead plaintiff. The Court will go on to determine which of the proposed lead plaintiffs has the largest financial interest and is therefore the "presumptive lead plaintiff" in this action.

*3. The Parties Must be Held to the Losses Alleged in their Initial Lead Plaintiff Applications*

In his initial Motion to [*13] be Appointed Lead Plaintiff, Holst only claimed $ 234,000.00 in damages under the proposed class period. He did, however, claim 30,000 shares and $ 94,500.00 in pre-class period losses, which will now fall within the class period selected by the Court, bringing his total to $ 328,500.00. Well after the filing of his application for appointment as lead plaintiff, Holst claimed that due to a "typographical error" that the number of pre-class period shares should have been 50,000 rather than 30,000. With the additional 20,000 shares, Mr. Holst now claims $ 391,500.00 in losses. Capital Max argues that the language and purpose of the PSLRA require that Mr. Holst be held to the losses alleged in his initial lead plaintiff application, and he should not be able to rely on the additional 20,000 stocks claimed after the sixty (60) day period had expired. The Court agrees.

Section 78u-4(a)(3)(A)(i)(II) of the PSLRA provides that [HN4]"not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." As Capital Max points out, many courts have held this provision to hold lead plaintiff applicants [*14] to the claims and calculations in their initial lead plaintiff applications, regardless of subsequent revisions. See e.g. In re Telxon, 67 F. Supp. 2d at 818 ("The plain language of the statute precludes consideration of a financial loss asserted for the first time in a complaint, or any other pleading, for that matter, filed *after* the sixty (60) day window has closed."); In re Able Labs. Sec. Litig, 425 F. Supp. 2d 562, 565-66 (D. N.J. 2006) (same); Ferrari v. Gisch, 225 F.R.D. 599, 603-04 (C.D. Cal. 2004) (same); In re Enron Corp. Sec. Litig., 206 F.R.D. 427, 440 (S.D. Tex. 2002) (finding that allowing "supplementation" of financial loss after the expiration of the sixty (60) day period would thwart the PSLRA's intent of expediting the Lead Plaintiff appointment process); Singer v. Nicor, Inc., 2002 U.S. Dist. LEXIS 19884 *9 (N.D. Ill. Oct. 17, 2002) ("the court will not consider the candidates' amendments of their amount of financial loss made after the filing deadline."). In essence, these courts have held that [HN5]the sixty (60) day filing deadline is a hard-and-fast rule with no room for subsequent supplementation or modification.

As one court pointed out, a different rule would "encourage [*15] parties seeking lead plaintiff status to 'manipulate the size of their financial loss by enlarging the class period or adding additional persons to a group' in supplemental filings . . . [which] would invite additional briefing. . . effectively rendering the strict timeliness set forth in the [Reform Act] meaningless." Ferrari, 225 F.R.D. at 603-04 (quoting In re Telxon, 67 F. Supp. 2d at 819). However, the court in In re Telxon, found that a proposed lead plaintiff's motivation and the fact that the initial representation was incorrect were immaterial. 67 F. Supp. 2d at 819 ("The motives of the [proposed lead plaintiff], however, are irrelevant to the fact that supplementation is not contemplated by the PSLRA, and do not alter the fact that supplementation after the expiration of the sixty (60) day period would not only be inconsistent with the language and purposes of the PSLRA, but would effectively nullify the time limits expressly provided therein."). The Court agrees with the reasoning of these courts in finding that to allow supplementation after the expiration of the sixty (60) day period would be inconsistent with both the language and purposes of the PSLRA. Accordingly, while [*16] there is no evidence that Mr. Holst's omission of the additional 30,000 shares was due to anything but a typographical

Page 6

Case 0:11-cv-61879-WPD   Document 11   Entered on FLSD Docket 09/16/2011   Page 14 of 17

2008 U.S. Dist. LEXIS 32271, *; Fed. Sec. L. Rep. (CCH) P94,703

error, the Court will nevertheless hold the parties to the losses initially claimed in their lead plaintiff applications.

It follows then, utilizing the longest proposed class period and the losses as claimed during the statutory sixty (60) day period for seeking appointment as a lead plaintiff, that Capital Max has the largest financial interest in this case. In its initial lead plaintiff application, Capital Max claimed losses of $ 359,857.00 [5] on 145,300 shares of Dyadic stock, with a total investment of $ 738,493.00. In his initial lead plaintiff application Mr. Holst only claimed losses of $ 328,500.00, [6] on 60,000 shares of Dyadic stock, with a total investment of $ 328,500.00. Because the Court must disregard the supplemental losses claimed later by Mr. Holst, the Court finds that Capital Max has the largest financial interest by any calculation. [7]

> 5   After fixing the minor "clerical errors" in the loss calculation of its initial lead plaintiff application, Capital Max claims a "financial interest" of $ 381,564.87 under LIFO and $ 409,567.68 under FIFO. These reporting [*17] errors differ slightly from Mr. Holst's however, because they do not reflect the dramatic discovery of 20,000 shares, they simply reflect (1) an incomplete date, (2) slightly inaccurate dates or prices, (3) duplicate trades, or (4) prices that included a broker commission. The Court need not decide, however, whether the PSLRA would permit Capital Max to correct these errors, because even without allowing the corrections, Capital Max has demonstrated the largest financial interest in this matter.
>
> 6   While the Court declines to include the additional 20,000 shares that Mr. Holst claimed after the close of the sixty (60) day period, it will include the 30,000 shares listed in his initial motion, but not included in his loss calculation. Because the Court has elected to utilize the longer class period claimed in Capital Max's Complaint, these losses now fall within the class period. Despite the fact that Mr. Holst did not claim these losses in his initial Motion, because they were included and claimed within the sixty (60) day period, the Court will count them. The Court will not punish Mr. Holst for failing to predict which class period the Court would ultimately select. Accordingly, Mr. [*18] Holst's losses claimed within the initial sixty (60) day period total $ 328,500.00.
>
> 7   The Court notes that the parties have extensively briefed whether the FIFO or LIFO method of calculating loss is most appropriate. However, the Court has no occasion to address this issue because Capital Max has the largest financial interest regardless of which method is utilized.

*4. Capital Max Satisfies the Requirements of Rule 23(a)*

[HN6]Under § 78u-4(a)(3)(B) of the PSLRA, in addition to possessing the largest financial interest in the outcome of the litigation, the most adequate lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B). Rule 23(a) imposes four (4) requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a). Of those prerequisites, only two - typicality and adequacy - are relevant in deciding a motion for appointment of lead plaintiff. See Grand Lodge of Pa., 2007 U.S. Dist. LEXIS 48191 at *5 n.7; Singer, 2002 U.S. Dist. LEXIS 19884 at *10. As the Court found in its original Order Appointing Lead Plaintiff [DE 19] each of the proposed lead plaintiffs [*19] satisfy these basic criteria.

As stated in its brief, Capital Max satisfies the typicality requirement because its claims share the same "essential characteristics as the class at large." Prado-Steinman ex rel. Prado v. Bush, 221 F.3d 1266, 1278-79 n.14 (11th Cir. 2000). Here, Capital Max seeks to represent a class who, like itself, (a) purchased Dyadic securities, (b) at market prices artificially inflated as a result of Defendants' violations of the securities laws, and (c) suffered damages thereby. Accordingly, the Court finds that Capital Max's claims are "typical" of those of the class.

The Court further finds that Capital Max will be an adequate lead plaintiff. [HN7]The adequacy requirement is satisfied where, as here: "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the class has sufficient interest in the outcome of the case to ensure vigorous advocacy." Weinberg v. Atlas Air Worldwide Holdings, Inc., 216 F.R.D. 248, 253 (S.D.N.Y. 2003) (citing Weltz v. Lee, 199 F.R.D. 129, 133 (S.D.N.Y. 2001)). Furthermore, Capital Max has proven that it is willing to participate [*20] in discovery and has hired competent and adequate class counsel. Accordingly, the Court finds that in addition to having the largest financial interest in this case, Capital Max otherwise satisfies the requirements of Rule 23 and is therefore the presumptive lead plaintiff in this action.

*5. Mr. Holst Cannot Otherwise Rebut the Presumption*

Although Capital Max is the presumptive lead plaintiff in this class action, Mr. Holst has the opportunity to rebut this presumption by proving that Capital Max "is

Case 0:11-cv-61879-WPD   Document 11   Entered on FLSD Docket 09/16/2011   Page 15 of 17

2008 U.S. Dist. LEXIS 32271, *; Fed. Sec. L. Rep. (CCH) P94,703

subject to unique defenses," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb), or "will not fairly and adequately protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). [HN8]In determining whether Mr. Holst has met his burden of rebutting this presumption, the Court keeps in mind that "the question *is not* whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair [] and adequate []' job." In re Able Labs., 425 F. Supp. 2d at 568 (quoting In re Cendant Corp. Litig., 264 F.3d 201, 268 (3d Cir. 2001)).

Mr. Holst attempts [*21] to rebut this presumption on several grounds. First, Holst argues that Prissert's close ties with Dyadic's CEO Emalfarb, render Capital Max subject to a unique defense. Second, he argues that Capital Max has put its own personal interests above those of the class, and finally, Holst argues that Capital Max's status as an investment advisor precludes its selection as lead plaintiff in this action. The Court will address each argument in turn.

**a. Prissert's Limited Contact with Dyadic's CEO do not Render Capital Max Subject to a Unique Defense Rendering it an Inadequate Lead Plaintiff**

Mr. Holst alleges that Capital Max is subject to "unique defenses" that will render it an inadequate lead plaintiff. Mr. Holst's statements about Prissert's relationship with Emalfarb are no more than thinly veiled accusations of insider trading. Mr. Holst states in his Rebuttal Brief:

> In fact, [Prissert's] relationship with [Emalfarb] may explain why he knew to sell Capital Max's stock before incurring the massive losses sustained by typical Dyadic investors. Not only were Prissert and Defendant Emalfarb on a first name basis, the regularly exchanged emails, voice mail messages, had in-person meetings, and [*22] talked on the phone. Even more egregious and atypical is the fact that Prissert publicly touted Dyadic stock *calling it a 'must-own' stock and offering to organize in-person meetings with Emalfarb for his clients."* (emphasis in original.)

As the basis for this statement, Mr. Holst attaches a string of emails consisting merely of business talk and benign small talk. However, the declaration of Mr. Prissert asserts that the two have never had a "social" or "personal" relationship, and in fact have never even met in person. Prissert further asserts that even the few times they have spoken over the phone they have only discussed business matters, and Emalfarb has never communicated any non-public information to Prissert, and Prissert never relied on any information obtained from Emalfarb, other than public information. Accordingly, the Court will not disqualify Capital Max as the most adequate lead plaintiff in this case based on the unsupported allegations by Mr. Holst that Prissert engaged in insider trading. See In re: Peregrine Sys., Inc. Sec. Litig., 2002 U.S. Dist. LEXIS 27690 at *40 (October 9, 2002) (refusing to disqualify a potential lead plaintiff where no evidence was proffered [*23] to show that the potential lead plaintiff had received any inside information that was inconsistent with the publicly disseminated material misstatements and omissions). The Court, of course, reserves the right to change its decision with respect to the appointed lead plaintiff in this case under appropriate circumstances and with appropriate evidentiary support. However, these circumstances are far from present at the point in the case.

**b. Mr. Holst has not Shown that Capital Max will put its Own Interests First to the Detriment of the Class**

Mr. Holst next argues that Capital Max is inadequate because it has argued to advance own interests ahead of those of the class, to the class' detriment. As evidence, Mr. Holst points to (1) Capital Max's Motion to be Appointed Co-Lead Plaintiff with ABC and (2) Capital Max's arguments in favor of utilizing the Miller class period for purposes of the instant motions.

Holst first argues that Capital Max is inadequate because after vigorously opposing ABC's initial appointment as lead plaintiff [DE 23], Capital Max later moved, along with ABC, for appointment as co-lead plaintiff [DE 36]. Holst argues that Capital Max's willingness to set aside its [*24] misgivings about ABC's adequacy to serve as lead plaintiff in order to achieve appointment itself, evidences an intent to put its own interests above those of the class, rendering it an inadequate lead plaintiff. The Court disagrees. Capital Max represents that after limited discovery many of its worries about ABC's ability to adequately represent the class were assuaged and would be further assuaged if it were allowed to serve as co-lead plaintiff along with ABC. The Court does not see this movement for appointment as co-lead plaintiff to be so egregious as to disqualify Capital Max. Further, the Court declines to speculate as to the reasons behind ABC's decision to withdraw as lead plaintiff itself.

Next, Mr. Holst argues that using the Miller class period would eliminate over $ 300,000.00 of Capital Max's own claimed losses (under the FIFO method of calculation). Once again, Mr. Holst argues that Capital

Case 0:11-cv-61879-WPD   Document 11   Entered on FLSD Docket 09/16/2011   Page 16 of 17

2008 U.S. Dist. LEXIS 32271, *; Fed. Sec. L. Rep. (CCH) P94,703

Max's argument that this class period might be appropriate for determining the most adequate lead plaintiff evidences a willingness to advance its own interests above those of the group. On this point, the Court believes that Mr. Holst simply misunderstood the litigation position [*25] of Capital Max. As the Court understood Capital Max's briefing and arguments, its position was merely that the initial class period should be used in determining the most adequate lead plaintiff, not that this class period should be utilized on the merits. Accordingly, the Court does not find that Capital Max has placed its own interests above those of the class to an extent that rebuts Capital Max's status as the presumptively most adequate lead plaintiff in this case.

### c. Capital Max has Standing as an Investment Advisor to Serve as an Individual Lead Plaintiff in this Action

Finally, Mr. Holst argues that Capital Max is inadequate, and lacks standing to sue, because it did not buy or sell Dyadic stock on its own behalf, but rather purchased the stock on behalf of its clients. [8] According to Mr. Holst, therefore, Capital Max's investors, rather than Capital Max itself are the real parties in interest in this case. In support of his position Mr. Holst points to In re Network Assocs. Sec. Litig., 76 F. Supp. 2d 1017, 1027-28 (N.D. Cal. 1999) (finding that the proposed lead plaintiff was really a group of separate legal entities that did not act as an individual under the securities [*26] laws), In re: Peregrine Sys., 2002 U.S. Dist. LEXIS 27690 at *50 ("'Only money managers that qualify as a 'single person' under the PSLRA may serve as lead plaintiffs.'"), and Smith v. Suprema Specialties, Inc., 206 F. Supp. 2d 627, 633-34 (D. N.J. 2002) ("This Court finds that StoneRidge Investment may not bring the action on behalf of its clients because it did not function as a 'single investor' and it has not submitted any evidence that it received permission to move on its clients' behalf."). [9] In each of these cases, the district courts declined to appoint a money manager or investment advisor as the lead plaintiff in the consolidated securities class actions at issue.

> [8] Holst further argues that Capital Max is an inadequate lead plaintiff because the entity itself was a "net gainer." That is to say, that Capital Max itself sold all of its Dyadic stock prior to the disclosures at issue and had a net gain of $ 35.60 on its sales of Dyadic stock. This argument, however, misses the point, as Capital Max is not moving for appointment as lead plaintiff on its own behalf, but rather as an investment advisor on behalf of its clients, who suffered significant losses allegedly due to the [*27] Defendants' violations of the securities laws.

> [9] Holst also cites to In re Tyco Int'l, Ltd., 236 F.R.D. 62 (D. N.H. 2006), however this case does not stand for the proposition it is advanced for. The court in Tyco held that whether or not the investment advisor was a "purchaser" within the meaning of the statute, it still had to satisfy the minimal constitutional standing requirements. Id. at 73. The court found that because "Voyageur does not allege that it was directly injured by the defendants' alleged misconduct, it lacks standing to sue on its clients' behalf." Id. In this case, the Court finds that Capital Max does sufficiently allege constitutional standing and accordingly, Tyco is inapposite.

However, the vast majority of the cases addressing the issue have found that under certain circumstances, investment advisors may be not only permissible lead plaintiffs, but desirable ones as well. Ezra Charitable Trust v. Rent-Way, Inc., 136 F. Supp. 2d 435, 442 (W.D. Pa. 2001) (appointing an asset manager as lead plaintiff because of its unfettered decision making authority, which made it a "purchaser" under the securities laws with standing to sue in its own name); Weinberg, 216 F.R.D. at 255 [*28] (when the investment advisor is also the attorney-in-fact for its clients with unrestricted decision making authority, the investment advisor is considered the 'purchaser' under the federal securities laws with standing to sue in its own name."); In re Goodyear Tire & Rubber Co. Secs. Litig., 2004 U.S. Dist. LEXIS 27043 *24 (N.D. Ohio May 12, 2004) (finding that an investment advisor had standing to sue based on a declaration that "Capital Invest controls and manages the Funds and acts as attorney-in-fact for them. Capital Invest has full and complete authority to purchase and sell securities for each of the funds, and to institute legal action on their behalf."); In re DaimlerChrysler AG Sec. Litig., 216 F.R.D. 291, 299 (D. Del. 2003) ("Although Defendants direct the Court to several cases supporting their position that investment advisors lack standing to sue under the securities law, the Court observes that more recent cases . . . have concluded that investment advisors with authority to make investment decisions for their clients are 'purchasers' for purposes of the securities laws such that they have standing."); In re Espeed, Inc. Sec. Litig., 232 F.R.D. 95, 98 (S.D.N.Y. 2005) [*29] ("in order for an investment advisor to attain standing on behalf of investors the transaction in question must have been executed as if by a single person. Moreover, the advisor must be the attorney in fact for his clients, and he must be granted both unrestricted decision-making authority and the specific right to recover on behalf of his clients."); Cf Sofran v. Labranche & Co., Inc., 220 F.R.D. 398, 403-04 (S.D.N.Y. 2004) (rejecting the argument that because the proposed lead plaintiff was not the beneficial owner of the shares that it

Case 0:11-cv-61879-WPD   Document 11   Entered on FLSD Docket 09/16/2011   Page 17 of 17

2008 U.S. Dist. LEXIS 32271, *; Fed. Sec. L. Rep. (CCH) P94,703

could not serve as an adequate lead plaintiff); Newman v. Eagle Building Technologies, 209 F.R.D. 499, 506 (S.D. Fla. 2002) ("The fact that the banks bought the securities on behalf of clients does not mean that the banks are inadequate lead plaintiffs.").

The Court agrees with the majority of the district court decisions on this issue as well as the only Southern District of Florida court to address it. Newman, 209 F.R.D. at 506. The Court further agrees with the courts that have determined that [HN9]"investment advisors with authority to make investment decisions for their clients are 'purchasers' for purposes of the securities laws such that they have [*30] standing." In re DaimlerChrysler, 216 F.R.D. at 299; see also Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1214-15 (1st Cir. 1996); Ezra Charitable Trust, 136 F. Supp. 2d at 442; Monetary Mgmt. Group of St. Louis, Inc. v. Kidder, Peabody, & Co., Inc., 604 F. Supp. 764, 767 (E.D. Mo. 1985); In re Sonus Networks Secs. Litig., 2006 U.S. Dist. LEXIS 28272 * 34 (D. Mass. May 10, 2006). In this case, as conceded by Mr. Holst in his briefing and at oral argument, Capital Max is acting as attorney-in-fact for its clients and according to the uncontradicted Prissert declaration, Capital Max had full authority to make the purchase and sale of the Dyadic stocks in this case. Accordingly, the Court finds that Capital Max, as investment advisor to its clients, is the "purchaser" of the Dyadic stock in question in this case, with standing to sue in its own name, on its clients' behalf.

In addition, Capital Max has alleged injury sufficient to meet the constitutional "injury in fact" requirement. Capital Max has a "significant financial interest in attempting to recover [its clients losses] in order to maintain their goodwill and future business." Ezra Charitable Trust, 136 F. Supp. 2d at 443.  [*31] Further, as pointed out by Capital Max, it does in fact suffer direct financial losses as a result of its clients losses. Capital Max is a registered investment advisor, and as such it is compensated for its investment advice based on the performance and value of the portfolios under its management. As a result, losses to a client's portfolio directly translate into losses in income to Capital Max. The Court further finds that Capital Max has demonstrated that it takes this litigation seriously and can effectively represent the class in this matter. Accordingly, because Capital Max is a "purchaser" under the securities laws who has satisfied the minimum constitutional standing requirements, the Court finds that Capital Max has standing to pursue this action in its own name, on its clients' behalf. The Court therefore finds that Mr. Holst has failed to rebut the presumption in favor of Capital Max and therefore Capital Max must be appointed Lead Plaitniff in this action.

*6. Selection of Lead Counsel*

[HN10]The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). In this case Lead Plaintiff Capital  [*32] Max has selected and retained Susman Heffner & Hurst LLP to serve as Lead Counsel and Kozyak Tropin & Throckmorton to serve as Liaison Counsel for the class. Both of these firms have extensive experience in successfully prosecuting complex securities actions and have frequently appeared in major actions in this and other courts.

Because there is nothing to suggest that Movant or its counsel will not fairly and adequately represent the Class, the Court will not interfere with the Lead Plaintiff's selection of counsel at this point in this case. Accordingly, the Court will appoint Susman Heffner & Hurst LLP as Lead Counsel and Kozyak Tropin & Throckmorton as Liaison Counsel for the class.

III. CONCLUSION

Accordingly, for the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Capital Max Inc's Motion to be Appointed Lead Plaintiff, and for Approval of its Selection of Lead Counsel and Liaison Counsel [DE 9] is hereby **GRANTED;**

2. Olav C. Holst's Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel [DE 16] remains **DENIED;**

6. Class Member Capital Max, Inc. is hereby appointed Lead Plaintiff in the above-styled case;

7. The law firm of Susman Heffner & Hurst LLP is hereby  [*33] appointed as Lead Counsel in the above-styled case;

8. The law firm of Kozyak Tropin & Throckmorton shall serve as Liaison Counsel in the above-styled case.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 18th day of April, 2008.

/s/ William P. Dimitrouleas

WILLIAM P. DIMITROULEAS

United States District Judge